Duncan T.
This is a rule to shew cause, why a mandaJ , 7 j mus should not issue to the auditor general, to compel him to draw an order on the treasurer of the Commonwealth, in favour of the relator, for g 189, with interest, from the time 777 or payment, on a warrant issued to Thomas Hartley, on the 16th October, 1787, for 220 acres of land in Manchester township, York county, under the provisions of an act of assembly J * * passed 29th March, 1813, entitled “ An act for the relief of sundry landholders in the manor of Springettsbury, in the county of York.” This act was founded on the petition of the landholders within the manor, to the Legislature, setting forth, that divers persons holdino- lands in the manor of r ° Sprzngettsbury, by warrants, dated prior to 1779, had since that time, paid into the land office, the arrears due on the said lands, and taken out patents, and others took out warrants 4 1 for vacancies, and lands held by settlement rights, and paid for the same to the Commonwealth, and that it had been since decided, that the title of the said manor, was in the late proprietaries, and not in the Commonwealth, and that they were deprived of deriving any advantage from the payment of the aforesaid money, for the said patents, and warrants, and praying the Legislature, either to extinguish the title of the proprietaries, or refund the- money paid into the public treasury. The Legislature acceded to the justice of the claims of the petitioners, for restitution of money thus paid, and provided, that the surveyor of the county of , , , . , . „ , J , ’ should ascertain, and certily to the surveyor general, what tracts, or parts of tracts in the said manor, had been patented under the Commonwealth, and what warrants, which have *82 issued out of the land office of the Commonwealth, have been executed or laid within the said bounds, and that the board of property thereupon, should ascertain the several sums of money which have been paid into the land office, on account of the aforesaid patents and warrants, and certify to the auditor general, the amount, and by whom paid; who was thereupon authorised and required, to draw his warrant on the state treasurer for the same, in favour of the said persons, or their legal representatives. It appears that the surveyor did certify to the surveyor general, the tracts or parts of tracts within the bounds of the said manor, among which, is the tract warranted to Thomas Hartley, and that the board of property did ascertain and certify to the auditor general the amount paid into the land office by Thomas Hartley, on his warrant, with the interest. It further appears, that the lands on which the said warrant was executed, had been sold and conveyed by the sheriff of York county, as the estate of Thomas Hartley, to one Philip Gardiner, and on his death, had descended to John Gardiner, one of the petitioners, and that the auditor had drawn his warrant on the state treasurer, in his favour, for the amount so certified, which had been paid to the said John Gardiner, as the legal representative of Thomas Hartley, long before any application made by the relator.
On this agreed statement of facts, it is now to be decided between the claimants, who were the legal representatives of Thomas Hartley, intended by the act; the persons representing the personal estate of Thomas Hartley, or those who held the land, thus affected by the proprietary title ? If this had been a transaction between individuals, in which there had been a conveyance, with warranty, and an eviction subsequent to the sale by the sheriff, the purchaser at sheriff ’s sale, being the assignee of Thomas Hartley, would be the only person who could recover on the covenants broken. The Commonwealth did not enter into any covenant of warranty, and if they had, no suit could be sustained against them ; but the Legislatui'e, on principles of common justice, place themselves in the situation of an individual who had conveyed with covenants of warranty, and agree to pay over to the persons who were damnified by the proprietary title, such compensation as could be recovered by one individual from *83 another, on such covenant of warranty. There was no damnification to Thomas Hartley in his life time. Fiad he died intestate, seised of the land, his heirs, and not his personal representatives would have been entitled to the bounty of the Legislature ; so had he devised the land, his devisee, and not his executor, would have been entitled. There would, in these cases, be no foundation for the claim of his executor or administrator, in law; so if Thomas Hartley, had conveyed in his life time, it never could be pretended, thathaving sold the land and received its value, he could, (because he had no title to it,) receive a benefit from that very defect of title. The sheriff’s vendee stands in the same situation as the assignee of the claimant, whose title is sold; all title to the land, and every thing connected with the title, all covenants of warranty, all that runs with the land, passes to the vendee, who could in his own name, as assignee of the defendant in the judgment, on which it was sold, support an action ; he is quoad hoc the representative of the defendant; there is no legal right remaining in him; he can bring no action, for damages he has sustained none; the right to the land gives the remedy to the sheriff’s vendee; there is no shadow of right in him; there is no spark of equity in him, which could light up any claim on the justice or the favour of the legislature. By legal representatives, the term used in this act, was intended, the representative of the land ; the act was for the relief of the landholder, and so it is entitled. The same question occurred in the case of Duncan v. Walker, 2 Dall. 205, under the act of 21st December, 1/84, granting pre-emption to certain settlers; it was granted to them, and their legal representatives. The plaintiff claimed under the heir; the defendant, under a sale made by administrators. The Court were of opinion, that by the words, legal representatives, heirs or assignees were to be understood; for though the expression in the abstract might appear equivocal and ambiguous, it was explained by the subject matter, and land, ex vi termini, importing real estate, the legal representative must, in legal contemplation, be the heir, and not the administrator. Whether we consider the legal signification of the words, legal representatives, as applied to the subject matter, or look to the justice of the claims of the parties here, or the objects of relief, stated in the title to the *84 act, we are clearly of opinion, that John Gardiner, the alienee, the landholder, was entitled to the warrant on the treasurer, and that the claim for compensation set up by the relator, is without any foundation, either in law or equity, and discharge the rule.
Elder, for the relator.
Douglass, contra.
Rule discharged.